IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| MATTHEW BARRETO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. SAG-25-03896 |
| | * | |
| SAFEWAY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Matthew Barreto ("Plaintiff"), who is self-represented, filed this action against his former employer, Safeway. ECF 1. Several motions are currently pending, including Safeway's motion to dismiss the complaint, ECF 11, and Plaintiff's motion for leave to file sur-reply, ECF 17.[1] This Court has reviewed both motions and the related filings. ECF 14, 15, 18, 19. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, both motions will be granted.

I.    **FACTUAL BACKGROUND**

The following facts relevant to this motion are derived from the Complaint, ECF 1, and are assumed to be true for the purposes of adjudicating this motion. When Plaintiff interviewed for a job at Safeway, he expressed a preference for working at least half of his time as a Cashier. *Id.* at 6. Safeway offered him a position working exclusively as a Courtesy Clerk. *Id.* Plaintiff accepted although he did not know what the job would entail. *Id.*

---

[1] Two additional motions are pending: Plaintiff's Motion to Appoint Counsel, ECF 5, which will be denied because this Court does not routinely appoint counsel for self-represented litigants who are able to articulate adequately the basis of their claims; and Safeway's unopposed Motion for Extension of Time to respond to the Complaint, ECF 8, which will be granted *nunc pro tunc*.

Although Plaintiff had told Safeway he could work on Sundays, Sundays were "brutal" because it was hard to stock carts in the store lobby. *Id.* On one Sunday in August, 2023, Plaintiff's supervisor denied him a break because he had not stocked the lobby with carts. *Id.* Plaintiff wrote to the Store Director, Joan Callegary, stating that he no longer wanted to work on Sundays and again asked to work as a cashier. *Id.* Ms. Callegary responded that she could not excuse him from work on Sundays and that she could not transfer him to cashier because Plaintiff was the only courtesy clerk available for morning shifts on weekdays. *Id.* She did agree to schedule him for 36 hours per week so that he could make ends meet. *Id.* at 7. During this exchange, Plaintiff had not disclosed to Safeway that he had autism. *Id.* at 6.

Ms. Callegary told Plaintiff that he had to fill out a form, available annually in March and September, to request a transfer from Courtesy Clerk to another position. *Id.* at 7. Plaintiff filled out the form in September, 2023, but did not receive a transfer. *Id.* In October, 2023, Safeway hired a high school student as a Courtesy Clerk. *Id.* Four months later, although he had not filled out the transfer form, that student was transferred to a Stocker position. *Id.*

In March, 2024, the forms to request a transfer were not available, either to Plaintiff or Ms. Callegary. *Id.* In June, 2024, the store hired another Courtesy Clerk, Arnold Zuniga. *Id.* Without filling out a transfer form, two months later, Mr. Zuniga was transferred to another position. *Id.*

In late July/early August of 2024, Safeway hired two new Courtesy Clerks for the store, resulting in that position being overstaffed. *Id.* Plaintiff's hours began to be cut. *Id.* at 8. Plaintiff overheard the Online Order (or dot.com) supervisor state that her department was understaffed. *Id.* at 7. After determining that one of the new Courtesy Clerks (Arnold) was available for morning weekday shifts, Plaintiff wrote to Ms. Callegary to ask if he could work in the dot.com department

while continuing as a Courtesy Clerk on Sundays. *Id.* at 8. Before Plaintiff received a response to the letter, Arnold was transferred to another department. *Id.*

Plaintiff wrote another letter to Ms. Callegary, asking why his hours were being cut, why other employees were permitted to work in multiple departments, and why newer Courtesy Clerks had received transfers when he had not. *Id.* Plaintiff stated, for the first time in that letter, that he believed he was being discriminated against because of his disability. *Id.*

Ms. Callegary invited Plaintiff to her office to have a conversation about his letter. *Id.* During that meeting, she told Plaintiff (1) that courtesy clerks could not be cross-trained for grocery positions and (2) that he had originally been guaranteed 25 hours per week. *Id.* The meeting lasted about 45 minutes and ended without a resolution Plaintiff deemed satisfactory. *Id.* Plaintiff filed a charge with the Maryland Commission on Civil Rights ("MCCR") against Safeway. *Id.* at 9.

On September 12, 2024, someone removed about fifty percent of the shopping carts from the Safeway store. *Id.* On Sunday, September 15, 2024, to try to procure enough carts for the customers, Plaintiff used a set of carts that had been chained to the front of the store. *Id.* On Wednesday, September 18, 2024, the Assistant Store Director confronted Plaintiff about the chained carts, demanding that they be re-chained because their "lock wheels" were not functioning. *Id.* Plaintiff disagreed with that decision. *Id.*

On Sunday, September 22, 2024, Plaintiff tendered a resignation letter to the evening manager to be passed to Ms. Callegary. *Id.* at 10. The letter stated that he would resign on October 12, 2024 unless he were placed in a different position. *Id.* As October 12, 2024 approached, Plaintiff saw that the envelope containing his letter remained unopened on Ms. Callegary's desk. *Id.* Plaintiff continued working. *Id.* Sometime during the week following October 12, Ms.

3

Callegary invited Plaintiff to her office because she had heard rumors that he was resigning. *Id.* He told her about the letter but decided to remain on the job "for money's sake." *Id.* He also informed her about the cart shortage. *Id.*

Between that date and November 3, the store did not remedy the cart shortage, leading to more frustrated customers. *Id.* The other courtesy clerk began calling off on Sundays to avoid the confrontations. *Id.* On November 3, 2024, a Grocery Manager confronted Plaintiff about the lack of carts and ordered Plaintiff to use the chained carts, which the Assistant Director had already told Plaintiff he could not do. *Id.* at 11. Plaintiff responded, "Why don't you ask that bitch Joan if we can use those carts!" *Id.* Plaintiff was immediately called to Ms. Callegary's office, where he told her about the frustrating working conditions involving the carts and stated that he "was not okay with the discriminatory treatment" she had afforded him at the store. *Id.* She suspended him. *Id.*

On the following Wednesday, November 6, Plaintiff reported to the store and wrote a statement about the November 3 incident for forwarding to human resources. *Id.* On November 11, Plaintiff received a letter from the Labor Relations Manager terminating his employment. *Id.*

When the MCCR declined to pursue Plaintiff's claim, he filed the instant lawsuit. *Id.* at 12.

## II.      LEGAL STANDARDS

Safeway seeks to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) governs situations where the Court is alleged to lack subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Under that rule, the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.,* 166 F.3d 642,

647 (4th Cir. 1999). "[T]he district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).

Safeway also seeks dismissal pursuant to Rule 12(b)(6). That standard presumes the facts alleged by a plaintiff to be true, then assesses whether the complaint still fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "a plausible claim for relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Rule 12(b)(6) analysis is typically limited to the four corners of the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, other documents may be considered where they are "integral to and explicitly relied on in the complaint" and their authenticity is not challenged. *Id.* (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Notably, "[i]n employment discrimination cases, courts often take judicial notice

of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. June 1, 2021) (quoting *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)); *see also Webb v. Potomac Elec. Power Co.*, TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the EEOC Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Highway Admin.*, JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district

court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

III.   **ANALYSIS**

### A.  Rule 12(b)(1) jurisdictional argument

Safeway first contends that this Court lacks subject matter jurisdiction because the Labor Management Relations Act ("LMRA") preempts or precludes Plaintiff's statutory and common law claims. Section 301 of the LMRA provides that federal courts have jurisdiction over disputes involving "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). Thus, where resolution of a plaintiff's claims requires interpretation of a collective bargaining agreement, arbitration requirements are enforced. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219 (1985).

Safeway argues that because Plaintiff's dissatisfaction with his position related to his schedule and his desire to transfer to a new position within the store, and because he was employed in a position represented by a union, "the applicable collective bargaining agreement governs those terms and conditions of employment." ECF 11-1 at 10. It is not clear on the record before this Court, however, that the collective bargaining agreement addresses those issues or that interpretation of the collective bargaining agreement might be necessary to resolve Plaintiff's claims. Accordingly, at this stage, this Court declines to find preemption and will proceed to the

7

Rule 12(b)(6) analysis. Of course, should the complaint be amended, Safeway will be free to re-raise this issue if the need to interpret the collective bargaining agreement emerges.

### B.  Rule 12(b)(6) motion

Plaintiff's Complaint is in narrative form but mentions that it asserts claims for "Failure to Accommodate, Disparate Impact, Disparate Treatment, Hostile Work Environment, and Wrongful Termination." ECF 1 at 6. This Court will address each in turn.

### 1.  Failure to Accommodate

A prima facie case for failure to accommodate requires a plaintiff to show: "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [his] disability; (3) that with reasonable accommodation [he] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). Looking at the second element, it is clear that any failure to accommodate claim can only lie for actions taken (or not taken) after Plaintiff informed Safeway of his disability in August of 2024. More importantly, though, Plaintiff has not sufficiently alleged that he was unable to perform the essential functions of a courtesy clerk absent reasonable accommodation or that he ever specifically requested an accommodation for his disability. He simply alleges that he "disclosed [his] disability," ECF 1 at 8, and feels he was denied an interactive process. Because those assertions do not suffice, the failure to accommodate claim will be dismissed.

### 2.  Disparate Impact

A disparate impact claim requires a plaintiff to allege facts that (1) identify a facially neutral employment practice or policy and (2) permit an inference that the practice or policy has

an outsized effect on persons with a disability. *See White v. City of Annapolis*, 439 F. Supp. 3d 522, 544 (D. Md. 2020).

Plaintiff does not specifically identify any employment practice or policy that has a disparate impact on persons with autism. The only "policies" referenced are (1) "courtesy clerks cannot be cross-trained to work in grocery positions" and (2) employees have to fill out a form in March or September to transfer to a new position. Although Plaintiff has explained why his supervisor's invocation of these policies prevented him from working in a position he preferred to his existing one, he has not alleged any facts to plausibly suggest an inference of a broader disparate impact on persons with disabilities. Accordingly, that claim must be dismissed.

### 3. Disparate Treatment

A plaintiff mounting an ADA disparate treatment claim must plead facts plausibly suggesting disability-based discrimination. Here, Plaintiff alleges no facts constituting direct evidence of intentional discrimination, such as comments made by the decisionmaker suggesting animus relating to his disability. He must therefore plead a plausible claim under the *McDonnell Douglas* burden-shifting scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* standard begins with a prima facie case established by the Plaintiff, which must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.2010). While a plaintiff need not plead facts supporting each element of a prima facie case in the complaint, he must plead sufficient facts to establish a plausible discrimination claim to meet the *Twombly* standard. *See id.* ("[W]hile a plaintiff is not required to plead facts that constitute a prima

facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level'" (citation omitted) (quoting *Twombly*, 550 U.S. at 555)).

Here, Plaintiff has failed to plead facts supporting a plausible discrimination claim. While he alleges that other courtesy clerks, Alejandro and Arnold, were transferred without filling out the forms the supervisor told Plaintiff were required, those transfers occurred before Plaintiff told his supervisor about his autism diagnosis. Thus, it is not plausible that those decisions were made because of disability discrimination. The same analysis precludes any disparate treatment claim arising out of decisions made at the time of Plaintiff's initial hiring.

To the extent that Plaintiff's disparate treatment claim pertains to his termination, he has not offered any evidence that he received different treatment from similarly situated employees outside his protected class. He offers no facts suggesting that other, non-disabled employees with similar angry and profane outbursts have been allowed to remain employed or have received lesser discipline. Such allegations would have to include a comparator who "dealt with the same supervisor, [was] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Absent such allegations, Plaintiff has not plausibly pleaded that his termination was premised on disability discrimination.

### 4. Hostile Work Environment

A hostile work environment claim requires a plaintiff to show "(1) unwelcome conduct; (2) that is based on the plaintiff's [disability]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015)

10

(quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). Simple mistreatment, unfair decision-making, or rude conduct does not suffice to support a hostile work environment claim. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (concluding that "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with [one's] supervisor" do not suffice) (internal citations and quotation marks omitted); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment).

Plaintiff's complaint is devoid of significant assertions of hostility by anyone (except perhaps customers unhappy with the unavailability of shopping carts). To the extent that the perceived "hostility" comes from store customers, there is no evidence that their conduct would be imputable to Safeway, that they had any knowledge of Plaintiff's disability, or that they treated him any differently than the other courtesy clerks who bore the brunt of their frustrations. And to the extent supervisors may have occasionally spoken to Plaintiff in a rude manner, such incidents were insufficiently severe or pervasive to plausibly create an abusive environment. Plaintiff's perception of unfair treatment cannot alone support a hostile work environment claim.

### 5. Wrongful Termination

The elements of wrongful discharge are (1) a discharge that (2) violated a clear mandate of public policy, with (3) a nexus between the employee's conduct and the employer's termination decision. *See King v. Marriott Int'l Inc.*, 160 Md. App. 689, 700 (2005). Recovery under a wrongful

discharge theory is not available where statutory remedies exist for the alleged wrong. *See Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 493, 496 (1990) (rejecting a wrongful discharge claim where the individual was able to "pursue a remedy under both the state and federal anti-discrimination statutes for his discharge from employment for apprising his employer of allegedly discriminatory employment practices"). As Plaintiff appears to assert that his termination was motivated by his complaints of discrimination, statutory remedies exist in the form of an ADA retaliation claim, which Plaintiff has not expressly made in his complaint despite having raised it in his administrative charge. *See* ECF 11-3 at 6. Accordingly, this Court will dismiss the wrongful termination claim and Plaintiff will be afforded thirty days to file a motion for leave to amend his complaint, giving him an opportunity to assert an ADA retaliation claim.

## IV.    CONCLUSION

For these reasons, Plaintiff's Motion to Appoint Counsel, ECF 5, will be denied, Safeway's Motion for Extension of Time, ECF 8, will be granted, Safeway's Motion to Dismiss, ECF 11, will be granted, and Plaintiff's Motion for Leave to File Sur-reply, ECF 17, will be granted. The complaint will be dismissed without prejudice and this case will be closed, subject to reopening should Plaintiff file a motion for leave to amend his complaint within thirty days.

Dated: April 3, 2026                                              /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge